In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-2008

MARILYN ZORETIC,

*Plaintiff-Appellant,*

*v.*

JOHN DARGE, Deputy Sheriff, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cv-06011—**Robert W. Gettleman**, *Judge.*

ARGUED JANUARY 4, 2016 — DECIDED AUGUST 8, 2016

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Marilyn Zoretic and her family
were evicted from their apartment twice with the same evic-
tion order. Zoretic sued the deputy sheriffs who carried out
the eviction, along with the owners of the unit who initiated
the eviction and their agents. Summary judgment was
granted to all defendants. On appeal, Zoretic argues that the
deputies lacked any legal authority to enter her residence, and
that the owners of the unit acted outrageously in initiating the
second eviction. Because the deputies did not meet their sum-
mary judgment burden of demonstrating they were entitled
to judgment as a matter of law on Zoretic's Fourth Amend-
ment claims, we reverse the grant of summary judgment to
the deputies. But because Zoretic failed to create a material

factual dispute about whether the owners of her unit were extreme and outrageous in pursuing her eviction, we affirm summary judgment on her claims of intentional infliction of emotional distress.

## I. BACKGROUND

As an initial matter, Zoretic failed to comply with Northern District of Illinois Local Rule 56.1(b) by providing a comprehensible response to each numbered paragraph of the defendants' 56.1(a) statements of material facts which the defendants argued entitled them to summary judgment. While we liberally construe the pleadings of individuals who proceed pro se, "neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *See, e.g.*, *Greer v. Bd. of Educ.* 267 F.3d 723, 727 (7th Cir. 2001). We have repeatedly held that requiring strict compliance with Rule 56.1 is not an abuse of the district court's discretion. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 817 (7th Cir. 2004). So like the district court, we rely on the defendants' statements of material facts.

### A. The First Eviction

In 2006, Marilyn Zoretic, along with her husband and three children, began renting a unit in the Castilian Court complex in Glenview, Illinois. Their landlord, Marina Shef, stopped paying condominium assessments and eventually lost possession of the unit to Castilian in 2008. Shortly after the court entered the order of possession, Castilian certified the order with the Clerk of Cook County to evict all occupants of the unit. At the time, Castilian was managed by Nimrod Realty Group and represented by the Kovitz Law Firm.

Having received the eviction order, the Cook County Sheriff evicted Zoretic and her family in January 2009. Later the same day, Nimrod's agent allowed Zoretic and her family to reenter the unit, and agreed they would sign a lease so Zoretic

could stay and pay $300 per month less in rent. But Zoretic never signed the lease or paid rent again.

## B. The Second Eviction

A month after the eviction and reentry, Nimrod was replaced by First Merit Realty Company as the new property manager for Castilian. Michael Bloom, a First Merit employee, noticed that Zoretic never signed a lease with Castilian. He sought legal advice from the Kovitz lawyers about the matter. They emailed him on February 4 and told him that "if the tenant refuses to sign the lease we would replace the eviction order with the sheriff."

Bloom then sent Zoretic a letter with the order of possession, advising Zoretic that if she wanted to remain in the unit, she needed to sign the new lease by February 10. He sent another letter on February 11, warning that Zoretic would face eviction if she refused to sign the lease and did not leave the apartment. After receiving no response, Bloom asked Kovitz lawyers to take over the eviction process. On April 29, Kovitz lawyers obtained a new date stamp from the Clerk of Cook County on the original September 2008 order, and placed the newly stamped order with the Cook County Sheriff.

On June 5, Deputy Sheriffs John Darge, Darrell Dyson, and Kyle Tryba were assigned to execute the eviction order. They arrived at Castilian around 2:00 p.m. and spoke with Edward Carey, a Castilian agent who confirmed the unit to be evicted. The deputy sheriff team then knocked on the door of the unit and announced their presence. When no one answered, they opened the door and entered the unit with their guns drawn, where they found Zoretic and her husband. Seeing that they were unarmed, the officers put down their weapons and asked if anyone else was in the unit. Zoretic and her husband were taken to the living room while the officers conducted a protective sweep, searching for any individuals who may have been hiding. While the deputy sheriffs were completing paperwork to finalize the eviction, Zoretic informed Dyson

that she had spoken with Chief Dicaro and Lieutenant Pon at the sheriff's office about the eviction. Dyson called Lieutenant Pon, who told him to continue the eviction. After photographing items that Zoretic asked to take with her, the officers escorted Zoretic out of the unit, and gave possession to Carey.

Less than a week later, Zoretic sued in circuit court, and was awarded possession of the unit until Castilian obtained a lawful order to enforce her eviction. She and her family moved back in, continued not to pay rent, and were eventually evicted in March 2012.

### C. Proceedings Below

Zoretic sued Darge, Dyson and Tryba in their individual capacities under 42 U.S.C. § 1983, alleging they violated her Fourth and Fourteenth Amendment rights during the June 5 eviction. She also sued Sheriff Tom Dart in his official capacity and Cook County for policies she alleged contributed to the deprivation of her rights, and Castilian and First Merit for intentional infliction of emotional distress. All the defendants filed for summary judgment, which the district court granted, and Zoretic now appeals.

## II. ANALYSIS

On appeal, Zoretic argues that the court erred in granting summary judgment to the defendants because there were genuine issues of material fact regarding: (1) whether the eviction order was facially invalid at the time the officers entered her apartment, (2) whether First Merit and Castilian acted extremely and outrageously in pursuing the second eviction, and (3) whether Zoretic suffered emotional distress. We review a district court's grant of summary judgment de novo. *Ellis v. DHL Express, Inc.*, 633 F.3d 522, 525 (7th Cir. 2011).

### A. Deputies Did Not Meet Legal Burden at Summary Judgment

Zoretic's complaint alleged violations of the Fourth Amendment due to the deputies' alleged unlawful search of her apartment, excessive force in breaking down the door to the unit and entering her apartment with guns drawn, and unlawful detention of her and her husband while they carried out the second eviction.

In order for a search or seizure to comply with the Fourth Amendment, it must be objectively reasonable. *Tennessee v. Garner*, 471 U.S. 1, 6 (1985). The Fourth Amendment's protections against unreasonable searches and seizures is made applicable to state actors under the Fourteenth Amendment. *Dklm v. Cnty. of Milwaukee*, 794 F.3d 713, 714 (7th Cir. 2015). In response to Zoretic's claims that they violated the Fourth and Fourteenth Amendments, the officers claim quasi-judicial immunity, arguing that all of their actions—entering the unit with guns drawn, conducting a protective sweep of the property, and detaining Zoretic and her husband—were pursuant to a facially valid eviction order.

On appeal, Zoretic challenges the legality of the eviction order upon which the deputies relied, arguing that quasi-judicial immunity is unavailable to the deputies, and that they lacked a legal justification for entering her unit. Zoretic argues that because Castilian allowed her to reenter the unit after the January eviction, it needed to obtain a new order to evict Zoretic the second time. The circuit court order restoring possession to Zoretic after the second eviction supports her argument, finding that because Castilian allowed her to move back into the unit after the first eviction, Castilian could not interfere with her right of possession to the unit until it obtained a new eviction order.

The defendants argue that Zoretic never presented these theories at summary judgment, so they are waived. *See United*

*States v. Ritz*, 721 F.3d 825, 827 (7th Cir. 2013) (theories not presented by non-moving party at summary judgment are waived on appeal). But the district court can only grant summary judgment if the *movant* shows that there is no genuine dispute of material fact and the *movant* is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). It is true that Zoretic's arguments in her opposition to summary judgment were brief and undeveloped. But even if she had made no argument at all, before the burden shifted to her, the deputies needed to demonstrate that no material facts were in dispute and that they were entitled to judgment as a matter of law. *Gerhartz v. Richert*, 779 F.3d 682, 685–86 (7th Cir. 2015).

The deputies cite to *Henry v. Farmer City State Bank* for the proposition that those performing ministerial acts under a judge's supervision and intimately related to judicial proceedings have quasi-judicial immunity. 808 F.2d 1228, 1238 (7th Cir. 1986). Henry involved a suit against various state officers who acted pursuant to a valid enforcement order. The suit alleged that the officers wrongly entered the plaintiff's home and seized his property. Granting the officers absolute immunity, we wrote that "the proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not sue the official responsible for its execution." *Id*. at 1239.

The rationale for this quasi-judicial immunity is that "officials making quasi-judicial decisions should be free of the harassment and intimidation associated with litigation." *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001). Judicial officers are entitled to quasi-judicial immunity in one of two ways. First, immunity might apply when they are sued for engaging in "quasi-judicial" functions, that is, functions that are similar to those a judge performs. The touchstone of this analysis is whether the officer is engaged in discretionary functions, such as "resolving disputes between parties, or authoritatively adjudicating private rights." *Snyder v. Nolan*, 380 F.3d

279, 288 (7th Cir. 2004) (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993); *see also Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) (issuing arrest warrant is a "truly judicial" act allowing quasi-judicial immunity); *Thompson v. Duke*, 882 F.2d 1180, 1184–85 (7th Cir. 1989) (scheduling and conducting parole hearing is a quasi-judicial function). The second way of obtaining quasi-judicial immunity is engaging in a non-discretionary or administrative function, but at the explicit direction of a judicial officer. *See, e.g. Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989) (court personnel shielded from liability in lawsuit over legality of transcript fees because they acted at direct request of judges). By the defendants' own admission, the order they used to enforce the eviction had already been executed in January, when possession transferred from Shef to Castilian. Castilian then gave possession to Zoretic on the basis of a new lease agreement. When she failed to sign a lease or pay rent, Castilian never pursued a new eviction order, and so the court never entered an order granting Castilian re-possession of the property. In short, when the deputies entered Zoretic's residence, they were not acting at the direction of a judge. And we have held that where officers are not acting pursuant to an enforceable order, they cannot receive quasi-judicial immunity. *Dunn v. City of Elgin*, 347 F.3d 641 (7th Cir. 2003) (no quasi-judicial immunity when state officials attempted to enforce out-of-state custody judgment which had not been certified and filed in Illinois court).

With regard to the argument that the clerk's new date stamp empowered the deputies to undertake the second eviction, the defendants failed to provide authority that the clerk's office had the power to issue an eviction order on its own, and we have found none. Certainly there is no evidence here that the clerk's office was adjudicating private rights between parties when it re-stamped a used court order. *See, e.g., Snyder*, 380 F.3d at 287 (no immunity because entering pleadings into a docket not the type of discretionary function normally attributed to judges). The clerk's act of stamping the order was

more akin to a ministerial act that did not require a judge's involvement at all. So we do not see a path for the deputies to bootstrap a quasi-judicial immunity defense for themselves to a theory that the *clerk* possessed quasi-judicial powers to adjudicate a new eviction order.

It is possible the deputies at the scene on June 5 believed they were enforcing a judge's eviction order. But they were not, and their mistake—even if reasonable—does not entitle them to quasi-judicial immunity. Even more problematic for the defendants, their entire argument as to why the manner in which they carried out the eviction was lawful is predicated on the legality of the eviction order. With nothing more than an order that had already been executed, they had no right to enter the residence, or to search Zoretic's belongings. And while it may have been reasonable to enter the apartment with guns drawn for safety reasons if they had been enforcing an actual order, the same is not true for entering a civilian's home with guns pointed for no reason at all. So they failed to meet their burden of showing that, as a matter of law, it was objectively reasonable to enter Zoretic's apartment, search it, point their guns at the Zoretics, and detain them. Perhaps a reasonable officer would not have known that the order was not enforceable, but that is not the argument the defendants made. We reverse and remand for further proceedings on the Fourth Amendment claims.

### B.  No Intentional Infliction of Emotional Distress

Zoretic's second argument on appeal is that the district court erred in granting summary judgment to First Merit Realty and Castilian on her claim that they intentionally inflicted emotional distress on her and her family. She argues their pursuit of the second eviction was extreme and outrageous because she produced evidence that they knew that Zoretic regained possession of the unit after the first eviction. She also argues she provided evidence of emotional damages.

In order for a plaintiff to prevail under Illinois law in a tort action for intentional infliction of emotional distress, she must demonstrate that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended that his conduct would inflict severe emotional distress, or knew there was a high probability that his conduct would cause severe emotional distress, and (3) the defendant's conduct in fact caused severe emotional distress. *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities are not actionable as intentional infliction of emotional distress." *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (internal citations omitted); *see also Stokes v. Bd. of Educ. of Chi.*, 599 F.3d 617, 626 (7th Cir. 2009) (holding that principal's actions to secure arrest of plaintiffs to restore order in school was not outrageous, even though he was mistaken about plaintiffs' roles in disturbance).

We need not reach the issue of whether Zoretic provided sufficient evidence that she suffered emotional distress because we disagree with Zoretic that there was sufficient evidence to survive summary judgment on the issue of whether the defendants' conduct was extreme and outrageous. Castilian and First Merit consulted with their attorneys about how to handle the situation, and while they may have received bad advice, they did not act with the requisite intent to be liable for intentionally inflicting distress on Zoretic and her family. There is no indication anywhere in the record that Castilian and First Merit knew their attempts to evict Zoretic were not in accordance with the law. The fact that they asked their attorneys about how to properly evict Zoretic supports the opposite inference. Summary judgment was proper on this claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and remand for proceedings consistent with this opinion.