**Joseph S. McGREAL, Plaintiff-Appellant,**

v.

**The VILLAGE OF ORLAND PARK, Timothy McCarthy, Patrick Duggan, and James Bianchi, Defendants-Appellees.**

No. 16-2365

United States Court of Appeals, Seventh Circuit.

Argued December 8, 2016

Decided March 6, 2017

Rehearing Denied March 27, 2017

John P. DeRose, Attorney, DeRose & Associates, Hinsdale, IL, for Plaintiff–Appellant.

Lance C. Malina, Attorney, Klein, Thorpe & Jenkins, Alan S. Madans, Attorney, Rothschild, Barry & Myers, Chicago, IL, Michael J. Wall, Attorney, Palos Park, IL, for Defendants–Appellees.

Before MANION, KANNE, and HAMILTON, Circuit Judges.

KANNE, Circuit Judge.

On June 28, 2010, Joseph McGreal was fired from his position as a police officer with the Orland Park Police Department. Thereafter, he sued the Village of Orland Park and three members of the police department—Chief of Police Timothy McCarthy, Lieutenant Patrick Duggan, and Lieutenant James Bianchi—claiming that the defendants violated his First Amendment rights by firing him in retaliation for his exercise of protected speech at a community board meeting. He also brought a state-law intentional-infliction-of-emotional-distress claim. The defendants filed a motion for summary judgment, which the district court granted.

This appeal ultimately comes down to evidence, or perhaps more appropriately, a lack of it. Because McGreal has offered no admissible evidence showing that he is entitled to relief, the district court properly dismissed his claims.

## I. BACKGROUND

McGreal began working as a police officer in the Village of Orland Park on January 10, 2005. Early in his career, McGreal performed competently: he received positive reviews on his performance evaluations and was nominated for various commendations and other honors. But conflict between McGreal and the police department arose in 2009, which culminated in McGreal's firing on June 28, 2010.

McGreal alleges that he was fired because of his exercise of protected speech at a village board meeting held on November 2, 2009. The village had called that meeting to discuss options to address an anticipated budgetary shortfall. One of the cost-saving options that the village proposed involved laying off as many as seven full-time police officers. McGreal, who had been elected secretary of the local police union in 2008, contends that he attended the meeting on behalf of the union. There, he allegedly presented three alternative solutions, none of which required the laying off of any full-time officers: (1) eliminating certain newly-created, non-essential positions; (2) eliminating the take-home squad-car program for certain lieutenant positions; and (3) creating a new longevity-benefit program that would allow eligible officers to take early retirement. McGreal contends that those solutions, which protected lower-level police officers at the expense of their superiors, drew the ire of the defendants. According to McGreal, the defendants then retaliated against him because of his speech by accusing, interrogating, and ultimately firing him under the pretext of unsubstantiated violations of department policy.

The defendants, on the other hand, deny knowing that McGreal engaged in any protected speech or even attended the November 2 board meeting. Instead, they argue that McGreal was legitimately fired because of a series of incidents that occurred in late 2009 and early 2010, none of which involved any protected speech.

The first incident occurred on October 27, 2009. That evening, McGreal conducted a traffic stop of a man named Charles Robson, which McGreal's in-squad video camera recorded. Because McGreal turned his microphone off shortly after placing

Robson in handcuffs, the police department questioned whether the stop had been performed properly. The defendants also allege that McGreal initially refused to write a report for the stop and even lied under oath about what occurred during the stop. The department conducted an investigation of the stop and its aftermath on November 23, 2009.

The defendants next contend that McGreal committed several acts of misconduct shortly after the November 2 board meeting. These included two unauthorized, unnecessary, and dangerous high-speed chases. The defendants also point to McGreal's behavior at an awards banquet on November 24, 2009, during which McGreal allegedly ostracized a fellow officer who had been honored as the Officer of the Year. The defendants further allege that McGreal continued this inappropriate behavior during his shift that same evening after the banquet.

Because of these and other incidents, the department interrogated McGreal on January 21, 2010. Specifically, they questioned McGreal under oath about his actions during the Robson traffic stop, the awards ceremony, and his shift immediately following the awards ceremony. The defendants allege that McGreal lied during the interrogation about each of those incidents. Afterward, the defendants contend that McGreal committed several additional acts of misconduct, including one instance of reckless driving while off duty.

On March 5, 2010, the department placed McGreal on paid administrative leave. McGreal's misconduct continued after this date. The written order placing McGreal on leave included a no-contact clause, which ordered McGreal "to have no contact or discussion of any kind with any member of this department, citizen or complainant regarding these investigations." (R. 215-23 at 1.) According to the defendants, McGreal violated the no-contact clause on at least two occasions. The department interrogated McGreal again on March 24, 2010. There, the defendants allege that McGreal again lied under oath, claiming that he never contacted anyone in the department about his case. The department ordered him to provide his phone records to verify his testimony, but McGreal refused, claiming that he was not an authorized user on his telephone account and could not obtain the records. The department then obtained the records by subpoena, which revealed that McGreal had in fact contacted at least two officers. The records also showed that, on the same day the department had asked him to provide his phone records, McGreal had removed his name as an authorized user on the account in an apparent effort to obstruct the department's investigation.

On April 21, 2010, the department presented McGreal with a "summarized list of reasons for contemplated disciplinary action," which charged McGreal with a total of sixteen acts of misconduct. (R. 215-24 at 2.) After meeting with McGreal, Chief McCarthy filed a statement of charges with the Board of Fire and Police Commissioners. (R. 220-20.) McGreal was then fired on June 28, 2010.

McGreal contested his termination through arbitration. After meeting with the parties seventeen times over a fourteen-month period, the arbitrator sustained McGreal's termination on November 14, 2012. McGreal unsuccessfully appealed the arbitrator's decision in the Appellate Court of Illinois. *McGreal v. Village of Orland Park*, No. 1-14-1412, 2015 WL 256529 (Ill. App. Ct. Jan. 20, 2015); *McGreal v. Ill. Labor Relations Bd. State Panel*, No. 1-13-3634, 2014 WL 7176785 (Ill. App. Ct. Dec. 16, 2014).

On June 27, 2012, McGreal filed this lawsuit under 42 U.S.C. § 1983 against the defendants in the Northern District of Illinois. In his complaint, McGreal alleged various constitutional and state-law claims surrounding his termination including: (1) a violation of due process under the Fourteenth Amendment, (2) retaliation in violation of the First Amendment, (3) a *Monell* claim against the Village of Orland Park and the police department, (4) tortious interference with advantageous business relations, and (5) intentional infliction of emotional distress. He further alleged that the village was liable under respondeat superior and indemnification theories.

The defendants filed a motion to dismiss, which the district court granted in part and denied in part on August 2, 2013. In particular, the district court dismissed all claims against the individual defendants in their official capacities, limited McGreal's § 1983 claims to alleged violations that occurred on or after June 28, 2010, and dismissed certain claims that were related to the arbitration hearing or that should have been filed with the Illinois Labor Relations Board. The defendants then filed a motion for summary judgment, which the district court granted in its entirety on April 15, 2016. The district court denied McGreal's motion for reconsideration on May 24, 2016. This appeal followed.

## II. ANALYSIS

■ We review *de novo* a district court's grant of summary judgment, construing all facts and reasonable inferences in favor of the nonmoving party. *Tapley v. Chambers*, 840 F.3d 370, 376 (7th Cir. 2016). Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting

*Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)).

On appeal, McGreal contests only the district court's dismissal of his First Amendment and intentional-infliction-of-emotional-distress claims. Our review is thus limited to those claims. *See e.g., United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (treating as waived arguments that an appellant did not raise in his opening brief). We begin with his First Amendment claim and then turn to his intentional-infliction-of-emotional-distress claim.

### A. First Amendment Retaliation

■ McGreal first argues that the defendants violated his First Amendment rights by firing him in retaliation for his speech at the November 2 board meeting. To prevail on this claim, McGreal must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). The defendants dispute only the third element—in short, causation—arguing that McGreal's termination had nothing to do with his speech.

■ At summary judgment in First Amendment retaliation cases, the burden of proof for causation is divided and shifts between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). First, the plaintiff must produce evidence that his speech was "at least a motivating factor—or, in philosophical terms, a 'sufficient condition'—of the employer's decision to take retaliatory action against him." *Id.* (quoting *Greene v. Doruff*, 660 F.3d 975,

979–80 (7th Cir. 2011)). If the plaintiff makes this initial showing, the burden then "shifts to the employer to rebut the causal inference." *Id.* The employer can meet its burden by offering an alternative explanation for the firing, showing that its decision to terminate the plaintiff "would have been made ·in the absence of the protected speech." *Thayer v. Chiczewski,* 705 F.3d 237, 252 (7th Cir. 2012). If the employer successfully rebuts the causal inference, the burden shifts back to the plaintiff to "demonstrate that the [employer's] proffered reason was pretextual and that the real reason was retaliatory animus." *Id.*

Here, McGreal fails at both steps one and three in this burden-shifting analysis. First, he has provided no admissible evidence· that· his speech was a motivating factor of the defendants' decision to fire him. Second, even if he had made that initial showing and shifted the burden back to the defendants, McGreal has provided no admissible evidence that the defendants' alternative explanations for his firing were pretextual. *See Swearnigen-El v. Cook Cnty. Sheriff's Dept.,* 602 F.3d 852, 861–63 (7th Cir. 2010) (analyzing both steps).

### 1. McGreal's Speech as a Motivating Factor

■ To show that his firing was motivated by his protected speech, McGreal must first demonstrate that the defendants knew of the protected speech. "Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan,* 176 F.3d 986, 999–1000 (7th Cir. 1999) (citation omitted). McGreal argues that the defendants retaliated against him because of his speech at the November 2 board meeting. To survive summary judgment, he thus has to provide admissible evidence that the defendants were aware of that speech before they initiated disciplinary proceedings.

■ McGreal has not met his burden: none of the "many documents" he references actually show that the defendants were aware of his speech. (Appellant's Br. at 29.) The first few documents McGreal cites—a memorandum written by the village manager to "All Village Employees" (R. 220-15 at 24) and an email from the union president to the union's members (R. 220-15 at 25)—were actually created weeks before the November 2 meeting and thus could not have provided the defendants with knowledge of who attended the meeting or what the meeting's attendees discussed. Other documents McGreal references—a letter from the village manager to the union president (R. 220-17 at 20) and ·an email from the union president to the village manager (R. 220-16 at 14)—do not address the November 2 meeting at all.

The deposition testimony that McGreal cites also doesn't show that the defendants knew of McGreal's speech. Although Chief McCarthy admitted during his deposition that he was aware that McGreal had met with the mayor and other board members on .October 26, McCarthy did not testify that he knew McGreal attended or engaged in protected speech at the November 2 meeting. (R. 220-9 at 26.) Because McGreal has provided no evidence that the defendants knew of his speech, he has failed to show that his speech was a motivating factor of the defendants' decision to fire him. *Stagman,* 176 F.3d at 999–1000.

### 2. The Defendants' Alternative Explanations

■ Had McGreal made the initial showing that the defendants were aware of his protected speech and that his speech was a motivating factor in his firing, the burden would have shifted to the

defendants to provide a legitimate and nonretaliatory explanation for the firing. But because the defendants provided several alternative explanations for McGreal's firing—that he (1) lied under oath during several formal interrogations, (2) committed numerous acts of insubordination, and (3) engaged in reckless conduct while on duty—the burden would have again shifted back to McGreal to show that these explanations were pretextual. *See Thayer*, 705 F.3d at 252. To show pretext and to survive summary judgment, McGreal must "produce evidence upon which a rational finder of fact could infer that the defendant[s'] proffered reason[s] [are] lie[s].". *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

■ Again, McGreal has failed to meet his burden: he has offered no admissible evidence to show that the defendants' nonretaliatory explanations for his firing were anything but true. Although he does cite a few documents to bolster his pretext argument, none of these are sufficient to withstand summary judgment. For instance, he cites his own unsigned affidavit (R. 220-14), his Second Amended Complaint (R. 89 at ¶ 14), his statement of undisputed material facts (R. 220-2 at ¶¶ 39, 41), and a spreadsheet that he created based largely on his own experiences (R. 220-21 at 45–47). He also tries to bolster his argument with irrelevant citations to portions of the record that have nothing to do with his firing. In short, the documents he references are not admissible *evidence* showing that the defendants' explanations are pretextual.

■ McGreal also largely relies on the suspicious timing of events to show pretext. But as we have repeatedly held, suspicious "timing alone does not create a genuine issue as to pretext if the plaintiff is unable to prove, through other circumstantial evidence, that he was terminated for a reason other than that proffered by the employer." *Pugh v. City Of Attica*, 259 F.3d 619, 629 (7th Cir. 2001). "The reason is obvious: '[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment.'" *Kidwell*, 679 F.3d at 966 (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)). Because McGreal has cited no evidence apart from suspicious timing that the defendants' alternative explanations are untrue, he has failed to meet his burden. The district court thus did not err in granting the defendants' motion for summary judgment as to McGreal's First Amendment retaliation claim.

### B. Intentional Infliction of Emotional Distress

■ McGreal next argues that the defendants' conduct amounted to an intentional infliction of emotional distress. To prevail on this claim under Illinois law, McGreal must show that (1) the defendants engaged in "extreme and outrageous" conduct; (2) the defendants "either intended that [their] conduct would inflict severe emotional distress, or knew there was a high probability that [their] conduct would cause severe emotional distress"; and (3) the defendants' "conduct in fact caused severe emotional distress." *Zoretic v. Darge*, 832 F.3d 639, 645 (7th Cir. 2016) (citing *Doe v. Calumet City*, 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 506 (1994)).

■ McGreal has offered absolutely no evidence that the defendants' conduct was extreme or outrageous or that their conduct caused him severe emotional distress. To the contrary, in his own brief, McGreal admits that the "severity" of his emotional distress was "probably of the garden variety." (Appellant's Br. at 53.) "The law intervenes only where the distress inflicted

is so severe that no reasonable man could be expected to endure it." *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (1988) (quoting Restatement (Second) of Torts § 46, cmt. j (1965)). Garden-variety emotional distress is insufficient to meet that standard. The district court did not err in granting the defendants' motion for summary judgment as to McGreal's intentional-infliction-of-emotional-distress claim.

### III. Conclusion

For the foregoing reasons, the district court's grant of the defendants' motion for summary judgment is AFFIRMED.