**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 3, 2018[*]
Decided May 7, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2799

| | |
|---|---|
| DARYISE L. EARL, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 15-C-282 |
| | |
| RICHARD KARL, *et al.*, | William C. Griesbach, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

Daryise Earl, an inmate at Wisconsin's Green Bay Correctional Institution, pursues two claims on appeal concerning a knee injury he sustained while working in the prison's kitchen. First he contends that his supervisor, Richard Karl, violated the Eighth Amendment by declining Earl's request for sick leave once the medical unit had cleared Earl to return to work. Second Earl argues that Dave Brooks, the food-service manager, fired Earl from his kitchen position in retaliation for his complaint about

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

unsafe work conditions. The district court entered summary judgment for the defendants. Because Karl reasonably relied on the advice of medical staff in denying the sick-leave request, and because Brooks did not know about Earl's complaint when he fired Earl, we affirm the judgment.

We review the evidence supporting Earl's claims in the light most favorable to him. *Smego v. Mitchell*, 723 F.3d 752, 754 (7th Cir. 2013). Earl was working as a cook in the prison's main kitchen when he slipped and fell on the wet floor on September 25, 2014, tearing a ligament in his left knee. He received immediate medical care from the health services unit, follow-up appointments, and a referral to a physical therapist. But Earl was concerned about another matter. He filed an inmate complaint about the kitchen's wet floors—a repeat of complaints he had filed before his fall. A complaint examiner received the grievance on October 20, but he later dismissed it after Brooks, the manager, told him that measures already were in place to prevent accidents.

Karl, the supervisor, expected Earl to return to work on October 14. As part of his medical care, Earl was issued a "no work" restriction that expired on October 13. When Earl realized that Karl had scheduled him to work on October 14, Earl asked to see medical staff to extend his work restriction, but the request was not received in time. When October 14 arrived, Earl reported to the main kitchen "with a noticeable hobbled gait," and asked Karl for a sick day. Karl called the health services unit, confirmed that Earl had no outstanding medical work restrictions, and denied Earl's request. Earl showed Karl his "enlarged and deformed knee," but Karl was not convinced. Knowing what health services had just said, he called Earl a liar and warned that he would submit a conduct report if Earl did not work. Earl struggled to work for three hours, after which he was granted sick leave for the remainder of his shift. A few hours later, Earl went to the medical unit and received an extended "no work" restriction.

Later on October 14, Brooks sought to replace Earl. He explained to a prison administrator that the operational needs of the main kitchen were too great to leave Earl's position vacant for his extended leave. The administrator approved the request and told Earl that he could reapply for the position once he recovered. When Earl was cleared to work, he tried applying to work in the main kitchen, but ended up assigned to a different kitchen by mistake. An administrator told Earl that he could reapply to the main kitchen after a mandatory wait period. He began working for the other kitchen and does not state if he ever reapplied to work in the main kitchen.

On appeal Earl argues that for two reasons Karl violated the Eighth Amendment. First, Earl says, Karl was deliberately indifferent when he forced Earl to work with a knee injury. But the district court ruled that Karl was not deliberately indifferent because, as a layperson, he reasonably relied on the advice of medical professionals when he called the health services unit to confirm that Earl did not have any work restrictions. *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (quoting *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004)). Earl now disputes whether Karl made that call, but to no avail. In the proposed undisputed facts submitted in support of their motion for summary judgment, the defendants stated that Karl called the medical staff on October 14 and verified that Earl had no medical work restrictions. Earl did not dispute that fact in his response. Moreover, in his complaint, Earl alleged that Karl had called medical staff and confirmed that Earl was cleared to return to work. Earl may not belatedly dispute a fact that he left unchallenged in the district court and admitted in his complaint. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018).

Second, Earl argues that Karl acted with deliberate indifference by denying his sick-leave request. Earl believes that it is *required* under the prison's policy to grant any requested sick leave. But Earl's belief is factually unfounded. Wisconsin's prison policy provides that an inmate may request sick leave if he feels he is unable to work, but the assignment supervisor has sole discretion to grant or deny the request. Karl consulted with medical staff and concluded that Earl was capable of performing his work duties. As we just explained, laypersons like Karl may reasonably rely on advice from medical professionals in assessing an inmate's fitness. *See Hayes*, 546 F.3d at 527. His decision to deny Earl's request for sick leave did not violate Wisconsin's policy. And, even if it did, a policy violation is not itself an Eighth Amendment violation. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (rejecting contention that violation of policy supports inference that defendants violated Eighth Amendment).

That brings us to the retaliation claim. Earl contends that Brooks violated his First Amendment rights by firing him in retaliation for filing a grievance about the kitchen's wet floors. Earl is assuming that the First Amendment protects an inmate's right to complain about internal work practices in prison, even though public employees out of prison do not always enjoy constitutional protections for speech related to their work activities. *See Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006); *see also Connick v. Myers*, 461 U.S. 138, 154 (1983) (declining to extend First Amendment protections to "an employee grievance concerning internal office policy"). But even if we assume that the First Amendment applies in this case, Earl's claim still fails. Earl

bears the initial burden of offering evidence showing that "the defendants knew of the protected speech," *see McGreal v. Village of Orland Park*, 850 F.3d 308, 313 (7th Cir. 2017), but he has not furnished evidence that Brooks knew about the inmate complaint. Inmate complaints are generally confidential, *see* WIS. ADMIN. CODE DOC § 310.16(1), and the report documenting the investigation of Earl's complaint does not show that the examiner revealed the source of the complaint to Brooks. In any case, by the time the complaint examiner received Earl's complaint (on October 20), Brooks already had submitted his request to remove Earl on October 14. Because Brooks could not possibly have known about speech that had not yet occurred, Earl has not met his burden of presenting evidence that Brooks knew about the protected speech.

AFFIRMED