**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 5, 2019[*]
Decided March 14, 2019

***Before***

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 18-1506

| | |
|---|---|
| RAMON CLARK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 16-CV-269-SMY-RJD |
| | |
| BART LIND, et al., | Staci M. Yandle, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Inmate Ramon Clark, who was suing Illinois Department of Corrections staff in another lawsuit, hired a company to operate his social media accounts. After a message by a gang member appeared on Clark's Facebook page, Bart Lind, an officer in the prison's intelligence unit, prohibited Clark from communicating with that company. Clark filed a grievance about the prohibition. Lind later put Clark in segregation upon finding contraband in his cell. Clark sued Lind and other prison staff for retaliating

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

against him in violation of the First Amendment. *See* 42 U.S.C. § 1983. He also asserted that prison workers violated his Fourteenth Amendment due-process rights by not informing him that they cut off his communication with the company. The district court entered summary judgment for the defendants. Clark did not put forth evidence that the defendants retaliated against him, so we affirm the judgment on his retaliation claims. But because the district court did not address Clark's due-process claim, we remand the case for further proceedings.

Clark wants to use online social media platforms to communicate with friends and family. As an inmate, though, he does not have internet access. Clark paid Extended Hands Gift Shop, Inc., to create a Facebook account and dating-site profiles for him. Every week, he wrote a letter to Extended Hands, directing it to send specific messages to specific recipients via these platforms. Extended Hands, in turn, mailed him printouts of any responses he received.

In early May 2015, Officer Lind discovered that a post from a gang member appeared on Clark's Facebook page and, after conferring with his superior officer Sean Furlow, he instructed mailroom staff to ban Clark from exchanging mail with Extended Hands. Nobody at the prison informed Clark about the ban.

Extended Hands later posted a statement on Clark's Facebook page that the Department of Corrections was returning mail that it had sent him. The post was spotted by one of Clark's friends, who notified him of its contents. Clark then tried to send a letter to Extended Hands, but prison staff returned it to him.

Clark suspected that his ban on his correspondence stemmed from his litigation against staff at an Illinois prison where he used to be housed; he had used Extended Hands at some point to post a message on Facebook about that other suit. He raised his suspicion with Officer Lind, who responded, "Well, maybe if you dropped your lawsuit, you'll get your mail service back." Clark filed a grievance in July, accusing Lind of retaliating against him.

Lind learned of the grievance within the next few weeks, Clark says, and together with other high-ranking officers promptly conducted a "shakedown"—a search—of his cell. Shakedowns are routine; indeed, Lind searched five other cells the same day that he searched Clark's. The search uncovered contraband under Clark's cellmate's bed. Even though Clark's cellmate took responsibility, Lind issued both inmates disciplinary reports and sent them to segregation, as is his common practice upon finding contraband. Per protocol, Clark was strip-searched when he entered

segregation. He remained in segregation for one week, after which a disciplinary committee reviewed the report and expunged it from his record.

Based on these events, Clark sued Lind, Furlow, prison administrators, and unnamed mailroom staff. In addition to his retaliation allegations, Clark asserted in paragraph 47 of the complaint that prison staff denied him due process by not informing him that he was prohibited from mailing with Extended Hands:

> Prisoners have a right to be notified if a letter addressed to them is returned. T[h]e right to be notified is a "due process" right …. For months the defendants deliberately withheld Plaintiff's mail returning it to its sender without notifying the Plaintiff that his mail was being returned … violating his First and Fourteenth Amendment[ rights].

At screening, *see* 28 U.S.C. § 1915A, the district court allowed Clark to proceed on his First Amendment retaliation claims but dismissed without prejudice "any intended claim not recognized by the court."

In the proceedings that ensued, Clark continued to press his due-process concerns. In a discovery motion, he attached letters that he sent the defendants, asking for documents that showed he had been notified of the mail restriction. He also moved to amend his complaint, explaining that he wished to amend paragraph 47 "to reflect the actions and identity of Defendants [Chalene] Hale and [Krista] Piotrowski." (The district court granted Clark leave to amend his complaint, but only insofar as the amendment named the previously unidentified staff as defendants in Clark's retaliation claim.) Then, after the defendants moved for summary judgment, Clark responded by maintaining that he had demonstrated a due process violation.

The district court eventually granted the defendants' motion for summary judgment, though it did not mention any due-process claim. It determined that no reasonable juror could find that the defendants retaliated against Clark for litigating because they would have cut off Clark's communication with Extended Hands regardless after a gang member communicated with him via Facebook. Likewise, the court ruled that Clark did not submit enough evidence for a jury to conclude that the shakedown was retaliatory. Without a constitutional violation, the court concluded, a jury could not find the defendants in supervisory roles liable.

On appeal, Clark primarily challenges the entry of summary judgment on his retaliation claims. He first argues that a reasonable juror could find that Lind and

Furlow prohibited him from communicating with Extended Hands in retaliation for maintaining a lawsuit against staff at another prison.

For his retaliation claim to survive summary judgment, Clark needed to put forth evidence from which a reasonable juror could find that his protected activity motivated the defendants to retaliate against him. *See Daugherty*, 906 F.3d at 610. We apply a burden-shifting analysis. *See McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017). The parties agree that Clark met his initial burden of producing evidence that his lawsuit was a motivating factor behind Lind's retaliation, *see id.*; Clark pointed to Lind's comment that the ban might end if Clark dropped his suit. (Clark failed to produce comparable evidence regarding Furlow.) The burden then shifts to Lind to show that, regardless, prison staff would have instituted the ban on Clark's access to social media. *See Milliman v. Cty. of McHenry*, 893 F.3d 422, 430–31 (7th Cir. 2018). Lind met this burden by presenting evidence of the prison's security interest in preventing gang members' communications into prison, *see, e.g.*, *Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005); indeed, a gang member communicated with Clark via Facebook.

Finally, the burden shifts back to Clark to show that the defendants' proffered reason is pretext, i.e., a lie, *see McGreal*, 850 F.3d at 313, and we agree with the district court that Clark failed to make this showing. Clark argues that Lind's security rationale must be pretext because a gang member never posted anything directly onto Clark's Facebook page. But the record shows that a gang member wrote a message with Clark's name, which appeared on Clark's Facebook page. Clark asserts in his reply brief that the message from the gang member was pretext because it did not concern gang activity, but raising an argument for the first time in a reply brief is too late. *See Daugherty*, 906 F.3d at 610.

Clark relatedly challenges the district court's conclusion that no reasonable juror could find that his grievance about the mail restriction led Lind to retaliate against him by searching his cell and punishing him after finding contraband in it. But a defendant cannot retaliate against a plaintiff for engaging in conduct of which he is unaware. *See Daugherty*, 906 F.3d at 610; *McGreal*, 850 F.3d at 313. Beyond Clark's speculation, which is not enough to survive summary judgment, *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017), Clark produced no evidence that Lind knew about his grievance before searching his cell. Even if Lind were aware of the grievance, Clark's only evidence of a retaliatory motive is the temporal proximity between the grievance and the search (one month) and the fact that many high-ranking officers conducted it (which Clark says is unusual based on his experience in the Department of Corrections). That is

not enough. Timing rarely is sufficient to show causation. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012). And it is prison policy that multiple officers conduct a shakedown. Clark also has not submitted evidence showing that the discipline for contraband was retaliatory. Indeed, both cellmates are commonly punished when contraband is found, and strip searches are protocol when an inmate is put in segregation.

Lastly, Clark asserts that the district court overlooked his allegations that Hale and Piotrowski (the mail room staff) failed to notify him that they were not delivering his mail from Extended Hands, in violation of his Fourteenth Amendment due-process rights. "Due process requires that the decision to censor inmate mail must be accompanied by 'minimum procedural safeguards.'" *Miller v. Downey*, — F.3d —, No. 17-1507, 2019 WL 494048, at *5 (7th Cir. Feb. 8, 2019) (quoting *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). And prison staff are "generally required" to provide inmates with notice and an opportunity to object to the confiscation of mail. *Id.*

The defendants argue that Clark forfeited any due-process claim by not pursuing it after the district court screened it. But Clark raised the claim in his initial complaint and asserted it again during discovery, in his amended complaint, at summary judgment, and now on appeal. The defendants argue in the alternative that Clark's due-process claim fails because the mailroom workers were at most negligent and because Clark independently learned of the mail restriction. But a determination on the merits at this stage would be premature. The claim must be remanded so that the district court can address Clark's due-process allegations in the first instance. *See, e.g., Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1005 (7th Cir. 2019); *Miller*, 2019 WL 494048 at *5. We encourage the district court to consider recruiting counsel to assist Clark on remand.

Accordingly, the district court's judgment is AFFIRMED in part and VACATED in part, and we REMAND the case for further proceedings.