In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3240

LIONEL BORDELON,

*Plaintiff-Appellant,*

*v.*

BOARD OF EDUCATION OF THE CITY
OF CHICAGO, a municipal corporation,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 08205 — **Edmond E. Chang**, *Judge.*

ARGUED NOVEMBER 2, 2015 — DECIDED FEBRUARY 3, 2016

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* On January 28, 2011, the Local School Council in charge of Kozminski Community Academy voted to not renew the contract of long-tenured principal Lionel Bordelon. Bordelon, who was 63 at the time, believed that his supervisor and Chief Area Officer for the Board of Education of the City of Chicago, Dr. Judith Coates, manipulated and exercised undue influence over the Council's deci-

sion. Bordelon alleges that Coates did so because of his age, which, if true, would violate the Age Discrimination in Employment Act, 29 U.S.C. § 623. The district court granted summary judgment to the Board on Bordelon's claim of age discrimination. We affirm.

## I. BACKGROUND

### *A. Factual Background*

In 1993, Bordelon became the Principal of Kozminski Community Academy, a kindergarten through eighth grade school in the Chicago Public School system. Although the Board of Education of the City of Chicago ("Board") supervises schools within its system, the Local School Council ("Council") is responsible for hiring, evaluating, and renewing contracts for principals in its area. The Board employs a Chief Area Officer to supervise the principals assigned to his or her area.

In October 2009, the Board hired Coates to serve as Chief Area Officer for Area 15, making her Bordelon's supervisor. According to Bordelon, Coates immediately "began taking steps to remove [him] from his position at Kozminski." (Appellant's Br. at 4.)

When Coates began her new job, she inherited from her predecessor a list of five or six principals. According to Tawana Sanders, Coates's former executive assistant, it was a list of "older black principals to be disciplined." Sanders recalled that the list included Bordelon; Lori Lennox, principal of Doolittle Elementary; and Mary Rogers, principal of Emmett Till Academy. All three principals were in charge of schools that were performing in the bottom of Area 15 schools.

In February 2010, Coates and the Board fired Sanders. Sanders testified that she "just felt that the Board wanted someone younger and brighter." Brighter, she explained, meant that the replacement "has got more education, or maybe she has a field in that position, she could do a better job."

Coates's efforts to remove Bordelon did not begin in earnest until November 2010. On November 16, 2010, Coates sent Bordelon notice of a pre-discipline hearing based on insubordination from September through November 2010. The notice contained the following allegations: (1) failing to respond to a parent issue raised on November 2; (2) failing to comply with a request from September 20 to set up a parent meeting in October; (3) failing to schedule a meeting requested in an October 25 email regarding the arrest of several Kozminski students; and (4) failing to respond to Coates's email from November 4 regarding resolution of the three aforementioned matters. As a result of his hearing, Bordelon received a five-day suspension without pay, which he appealed and never served.

On December 7, 2010, Coates issued an evaluation of Bordelon that said he "needs improvement," noting that Kozminski was on academic probation for the second year in a row with test scores trending downward.

In December 2010, the Council had a meeting, which only five of the nine members attended. At this meeting, Council member Everhart testified that Coates "more or less suggested … [t]hat it was time for [Bordelon] to give it up." Everhart clarified, however, that he thought Coates was not referring to Bordelon's age but to Kozminski's declining test scores.

Next, in a letter dated December 29, 2010, Coates reassigned Bordelon to home with full pay pending the outcome of an investigation into the following misconduct: (1) improperly replacing asbestos-containing tile at Kozminski; (2) purchasing irregularities; and (3) tampering with school computers in a manner that impeded access to Kozminski's records by the Board. James Ciesel, deputy general counsel for the Board, testified that he intended to prepare dismissal charges depending on the resolution of the investigation.

Instead, on January 28, 2011, while Bordelon was still suspended with pay, the Council voted not to renew Bordelon's contract. Three members voted against renewal, three voted in favor of renewal, and three abstained.[1] The Council informed Bordelon that the decision not to renew was based on the following reasons: (1) "[f]ailure to provide adequate principal reports" to the Council; (2) not being evaluated as "highly qualified"; (3) "not meet[ing] the requirements needed to have an effective and safe school environment"; (4) "[l]ow test scores"; (5) "[d]isciplinary problems"; and (6) "[p]arents do not feel you are open and receptive to them."

On February 28, 2011, Bordelon submitted his notice of retirement effective June 30, 2011, the end of his non-renewed contract.

---

[1] A majority of all the members of the Council constitutes a quorum to vote on the renewal of a principal's contract. 105 ILCS 5/34-2.2(c). If a quorum is present, for the contract to be renewed, a majority of the full membership of the Council must vote in favor of renewal, which would ordinarily be six votes. *Id.* According to Bordelon, however, there was a vacancy on the Council, which meant that he only needed five votes.

*B. Procedural History*

On November 16, 2011, Bordelon filed suit against the Board alleging (1) discrimination on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623; (2) discrimination on the basis of race in violation of Title VII, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981; (3) retaliation in violation of Title VII, the ADEA, and 42 U.S.C. § 1981; (4) constructive discharge; and (5) deprivation of due process.

The Board moved for summary judgment on all of Bordelon's claims, which the district court granted.[2] With respect to Bordelon's age discrimination claim, the district court found that the evidence Bordelon claimed was direct proof of age discrimination "do[es] not support a finding of discriminatory intent."

Bordelon then filed a motion for reconsideration in which he pointed to more evidence that he thought supported his age discrimination claim. The district court excluded the additional evidence as inadmissible hearsay, lacking foundation, or too conclusory to withstand summary judgment. This appeal followed.

## II. ANALYSIS

Bordelon's sole issue on appeal is whether the district court properly granted summary judgment to the Board on his claim of age discrimination. We hold that it did.

We review a district court's grant of summary judgment *de novo*. *Sartor v. Spherion Corp.*, 388 F.3d 275, 277 (7th Cir.

---

[2] Bordelon only appeals the grant of summary judgment with respect to his claim of age discrimination.

2004). We view the facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party. *Id.* at 278. A district court's evidentiary ruling to strike certain factual allegations, however, "is reviewed under a deferential abuse of discretion standard even on a motion for summary judgment." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 720 (7th Cir. 2004).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This requires that "there be no *genuine* issue of *material* fact," and "the mere existence of *some* alleged factual dispute" will not defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

We have made clear that "[t]he evidence supporting a factual assertion must represent *admissible* evidence." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (emphasis added). "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas*, 367 F.3d at 726; *see also Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." (quotation marks omitted)).

The ADEA prohibits an employer from "discriminat[ing] against any individual … because of such individual's age." 29 U.S.C. § 623(a)(1). Bordelon, however, has not sued the entity responsible for not renewing his contract—the Coun-

cil[3]—instead choosing to sue the Board, relying on a "cat's paw" theory of liability. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415–16 (2011).

Therefore, to withstand summary judgment, Bordelon must point to evidence upon which a trier of fact could conclude that Coates (1) harbored discriminatory animus based on his age and (2) gave the Council information that influenced its decision not to renew his contract.

*A. Coates's Discriminatory Motivation*

A plaintiff may prove discriminatory intent under the ADEA by relying on either the direct method of proof or the indirect method of proof.[4] *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008).

Under the direct method of proof, the plaintiff may rely on either direct evidence or circumstantial evidence to show discriminatory motivation. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720–21 (7th Cir. 2005).

Direct evidence, which is quite rare, is "an acknowledgment of discriminatory intent by the defendant." *Id.* (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

---

[3] The Council is a legal entity separate from the Board. 105 ILCS 5/34-2.1. It follows then that the Council can be sued in its own name for its conduct in not renewing a principal's contract. *See Asllani v. Bd. of Educ. of City of Chi.*, 845 F. Supp. 1209, 1219–20 (N.D. Ill. 1993).

[4] Bordelon does not rely on the indirect method of proof, which would proceed under the familiar burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Circumstantial evidence is evidence that "allows the trier of fact to *infer* intentional discrimination by the decisionmaker." *Id.* (quotation marks omitted). We have recognized four types of circumstantial evidence of intentional discrimination:

> (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.

*Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

Because Bordelon has chosen to proceed under the direct method of proof, he must point to admissible evidence, whether direct or circumstantial, of Coates's discriminatory motivation based on age.

*1. Evidence the District Court Admitted*

Before the district court—and on appeal—Bordelon relied on several pieces of circumstantial evidence that he claims give rise to an inference of Coates's age discrimination. First, he points to Everhart's testimony that Coates "more or less suggested … [t]hat it was time for [Bordelon] to give it up." This comment was made at a Council meeting in December 2010—shortly before it would vote on whether to renew Bordelon's contract. Bordelon contends that this is an ambiguous statement akin to a company's remarks that it would "not keep[] employees on until they reached sixty-five." *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1164–65 (7th Cir. 1994). This "express remark[] about Plaintiff's age" and

its suspicious timing, Bordelon argues, could lead a trier of fact to infer that Coates held an age animus. (Appellant's Br. at 5.)

Coates's statement is not an express remark about Bordelon's age. Nor is it an ambiguous remark sufficient to give rise to an inference that Coates was motivated by age. Everhart clarified that he thought this statement was referring to the school's poor academic performance, not Bordelon's age. Council member Chantelle Allen testified that Coates did not make any statements about Bordelon's age at the meeting. The statement made, unlike *Robinson*, does not even mention age. Coupled with the testimony of Everhart and Allen, no rational trier of fact could draw the inference that Coates was motivated to discriminate against Bordelon based on his age because of this statement.

Bordelon also points to Sanders's testimony that Coates had a list of five or six "older black principals to be disciplined." This list does not support an inference of intentional discrimination based on age. First, there was a younger principal included on the list; Lennox was only 48. Second, the two principals that Sanders identified as having been on the list were both, like Bordelon, in charge of poorly performing schools. Third, Sanders did not testify as to who the other two or three principals on the list were. Finally, the mere fact that older principals appeared on the list does not support an inference of age discrimination where most of the principals in Area 15 *were* older—only two of the sixteen principals were under 40 years old. Bordelon has offered no explanation as to why these principals were on this list or whether they merited discipline. Therefore, Sanders's testimony

about the list does not give rise to an inference of age dis-
crimination by Coates.

Additionally, as evidence that Coates favored younger
workers, Bordelon relies on Sanders's testimony that Coates
fired her and replaced her with someone "younger and
brighter." Sanders explained, however, that she meant that
her replacement must have "more education, or maybe she
has a field in that position, she could do a better job." This
testimony does not give rise to an inference that Coates was
motivated by age discrimination where Sanders expressly
disavowed that she was replaced because of her age. Instead,
she testified that she was replaced by someone who could do
a better job. Her impression that Coates wanted someone
younger, without more, does not give rise to an inference of
intentional discrimination.

*2. Evidence the District Court Excluded*

Additional evidence that Bordelon cites on appeal was ei-
ther excluded by or not raised in front of the district court.
Because Bordelon has not argued on appeal that the district
court abused its discretion in excluding the following evi-
dence, he has waived any argument about its exclusion be-
ing improper. *Lucas*, 367 F.3d at 726.

Assuming arguendo that Bordelon had not waived these
arguments, the district court did not abuse its discretion in
excluding this evidence, nor does the evidence to which he
directs us give rise to an inference of discriminatory motiva-
tion sufficient to withstand summary judgment.

Sanders testified that Coates would "pick on" principals
sixty years of age or older "by saying that their paperwork
was wrong." Sanders testified that Coates would "make

negative remarks about older principals to her team" but would not treat younger principals that way. Bordelon points to the similar testimony of Velma Cooksey, another older principal supervised by Coates. Cooksey testified that Coates "humiliated the only [sic] older principals" and "showed favoritism for the younger workers against the older workers."

In *Lucas*, we concluded that the district court did not abuse its discretion in excluding statements that the supervisor "treated African-Americans 'more harshly' … [or] that African-Americans were asked to change rail ties more frequently, work longer sections of the track and were written up for reasons that non-African-Americans were not." *Lucas*, 367 F.3d at 726.

Cooksey's and Sanders's testimony is as conclusory as the testimony rejected in *Lucas*. Neither offers specific facts upon which to conclude Coates treated older principals in a discriminatory manner. Instead, just like the statements excluded in *Lucas*, Sanders and Cooksey only offered sweeping generalizations about the way the protected class was treated. Because this evidence is not sufficient to preclude summary judgment, the district court did not abuse its discretion in excluding it.

Finally, Bordelon points to the affidavit of Clarice Berry, president of the Chicago Principals and Administrators Association. Berry's affidavit stated that "Coates treated older principals, including Plaintiff, in a discriminatory manner by giving schools with older principals less support than schools with younger principals. I know this from discussions I had with older principals in Area 15. Younger princi-

pals did not mention to me that they experienced a lack of curriculum support from Coates."

Berry's testimony is inadmissible hearsay and was properly excluded. Fed. R. Evid. 801(c), 802. Bordelon argues that Berry's testimony is not hearsay because it falls under the exclusion from hearsay for an opposing party's statement. Fed. R. Evid. 801(d)(2). The opposing party in this case is the Board. Berry's testimony comes from statements made by other principals in Area 15. Bordelon has not alleged that the Board adopted the other principals' statements or authorized the principals to speak on its behalf. Presumably, Bordelon is arguing that these constitute statements made by Board employees "on a matter within the scope of that relationship," and so their statements should be admissible against the Board under Rule 801(d)(2)(D).

To fall within the exclusion from hearsay, however, the statements made by the other principals must be within the scope of their employment relationship with the Board. "[N]ot everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998). An employee "need not have been personally involved in that action, but her duties must encompass some responsibility related to 'the decisionmaking process affecting the employment action.'" *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) (quoting *Simple v. Walgreen Co.,* 511 F.3d 668, 672 (7th Cir. 2007)).

In *Williams*, we held that the complaints of sex discrimination made by five other female employees did not fall within Rule 801(d)(2)(D) because "[n]one of the women were agents of [the defendant] for the purpose of making managerial decisions affecting the terms and conditions of their

own employment." 137 F.3d at 950. The same is true in this case. The complaints of age bias made by the other principals do not fall within the scope of their employment because they did not have authority to make managerial decisions on behalf of the Board regarding their own employment. Accordingly, the exclusion from hearsay under Rule 801(d)(2) is inapplicable, and the district court properly excluded Berry's testimony.

In conclusion, Bordelon has not constructed "a convincing mosaic of circumstantial evidence that [would] allow[] a jury to infer intentional discrimination by the decisionmaker." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 824 (7th Cir. 2011) (quotation marks omitted). Therefore, the district court properly granted summary judgment in favor of the Board.

### B. Coates's Influence on the Council's Decision

In order to maintain his suit against the Board for the *Council's* decision, Bordelon must also show that Coates influenced the Council's decision by relying on the cat's paw theory of liability.

"[C]at's paw liability may be imposed on an employer where the plaintiff can show that an employee *with discriminatory animus* provided factual information or other input that may have affected the adverse employment action." *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012) (quotation marks omitted and emphasis added). Because Coates and the Board were not the decision-makers in this case, Bordelon must show that Coates bore a discriminatory animus that influenced the Council. Bordelon did not point to evidence "that the biased subordinate actually harbored dis-

criminatory animus against the victim of the subject employment action," so the cat's paw theory of liability cannot save his case from summary judgment. *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013).

Furthermore, there is substantial evidence in the record that the Council had independent reasons for choosing not to renew Bordelon's contract, making it quite unlikely that Coates influenced its decision. Accordingly, the district court properly granted the Board's motion for summary judgment.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.