NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 6, 2017[*]
Decided December 13, 2017

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-1645

| | |
|---|---|
| JAMES OWENS, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 13-cv-594-MJR-SCW |
| JOHN EVANS, et al. *Defendants-Appellees.* | Michael J. Reagan, *Chief Judge.* |

## O R D E R

James Owens, an Illinois prisoner, brought this lawsuit under 42 U.S.C. § 1983 alleging that 43 prison employees and the Illinois Department of Corrections obstructed his access to courts in violation of the First Amendment. Owens alleges that at four different correctional facilities, he had insufficient access to the law library and his excess legal storage boxes, was unable to send mail required to prosecute his cases, and

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

was denied supplies. The district judge dismissed several claims and defendants, and later entered summary judgment for the remaining defendants. Because Owens's strongest claim for relief was untimely and the rest were correctly dismissed or decided in the defendants' favor, we affirm.

Before proceeding, we note that Owens—no stranger to the courts in this circuit—again filed an omnibus complaint against unrelated defendants and with claims arising from alleged conduct at four different prisons. As we have told him before, this scattershot strategy is unacceptable under Rule 20(a)(2) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act, 28 U.S.C. § 1915(b), (g). *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). And, more practically, grouping his grievances obscures his allegations against specific defendants. We have repeatedly "urge[d] the district courts to be alert to this problem." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). For that matter, so should defendants.

## I. Background

Owens's allegations span seven years, four prisons, and 44 defendants. He lists his theories of relief in six counts—obstructing his right to access the courts and conspiring to do so, retaliating against him for filing grievances and lawsuits, hindering various lawsuits by enforcing unconstitutional Illinois Administrative Code provisions governing legal mail, "confiscating" his trust account earnings to recover litigation costs advanced by prison business offices, and failing to investigate and respond to grievances. Owens does not specify which defendants are named for which counts. For the sake of clarity, we summarize prison by prison, as best we can, the allegations in the complaint and the evidence presented during the summary-judgment proceedings.

### A. Hill Correctional Center (2006–2008)

Owens alleges violations that first arose in 2007 while he was held at Hill Correctional Center and litigated a lawsuit in Knox County Circuit Court. Because his prisoner trust fund account was significantly overdrawn, Owens asked the prison mailroom to advance him money for postage after the court ordered him to serve the defendants with his pleadings. But the mailroom refused, stating that prisons must advance fees only for legal mail, which under Illinois law does not include legal documents sent to other parties. ILL. ADMIN. CODE tit. 20, § 525.130(a), .110(h). Owens's

lawsuit went nowhere anyway because the Knox County court assessed a $4.78 filing fee that he could not pay, so the case was dismissed.

Owens also says that defendants at Hill unlawfully limited his access to the library to four hours per month and applied any amount of money deposited in his trust account (like his $10-per-month state pay) to previous litigation costs that the office had advanced. He also asserts that he was not given adequate access to the boxes containing legal materials not kept in his cell to the detriment of his ability to litigate effectively.

**B. Big Muddy River Correctional Center (2008–2010)**

In 2008 Owens was transferred to Big Muddy River Correctional Center. He asserts that 11 employees at that prison impeded his ability to prosecute two lawsuits. He says they closed the library when the librarian was on vacation and thus denied him sufficient access, confiscated materials from his legal storage boxes, failed to provide him with pens, and did not advance him funds for sending summonses to defendants in one of his state-court suits. One case seems to have stopped after the Sangamon County Circuit Court denied him in forma pauperis status and required him to pay a $193 filing fee. In the other case, a Jefferson County judge granted a motion to dismiss, and Owens's appeal was dismissed for want of prosecution because he could not pay the fee to get a record on appeal. Owens also alleges that a librarian's refusal to make copies caused him to miss an unspecified legal deadline in an unspecified case.

**C. Pinckneyville Correctional Center (2010–2012)**

Owens was transferred to Pinckneyville Correctional Center in 2010. He continued to have difficulty litigating (although it is unclear which cases he had pending at the time). He alleges that he was denied access to the library when he had a statute-of-limitations deadline approaching and was unable to access to his legal storage boxes. He also asserts that prison officials confiscated other unspecified legal materials. And he complains that the quantity of supplies he was given pursuant to prison policy—two envelopes, ten sheets of paper, and one pen per month—was insufficient. At summary judgment the defendants produced an affidavit from a law library paralegal stating that Owens received additional supplies from the library when requested. Last, Owens alleged that his access to the library, his storage boxes, and necessary supplies was even more diminished when he was placed in protective custody.

**D. Lawrence Correctional Center (2012–2013)**

In 2012 Owens was transferred to Lawrence Correctional Center. He asserts that the law librarian, the warden, and a grievance counselor denied him access to his excess legal storage boxes. Some of these boxes had not arrived from his previous facility, and some may have been lost.

## II. Procedural History

At screening, *see* 28 U.S.C. § 1915A, the district judge dismissed several claims, starting with the one accusing defendants of confiscating Owens's trust account funds, because the money was taken to repay advances, which can be recouped under Illinois law and our precedent. § 525.130(a); *Gaines v. Lane*, 790 F.2d 1299, 1308 (7th Cir. 1986). Citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996), the judge next dismissed the claim that the prison officials failed to investigate or respond to grievances because there is no federal constitutional right to enforce a state's inmate grievance process. The judge also dismissed the defendants who could not be held liable for the complained-of events because their roles were simply to review and decide grievances. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). (Those dismissed from the suit were IDOC Directors Godinez, Taylor, Randle, and Walker; Administrative Review Board members Allen, Anderson, Benton, Fairchild, and Miller; IDOC Program Committee Chairs Childers and Valdez; and Grievance Officers Deen, Pampel, Schisler, Sanders, and Winsor.) Finally, the judge dismissed IDOC because it is not a person suable under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The remaining Hill and Big Muddy defendants (except for John Evans, a warden at Big Muddy) then jointly moved to dismiss because, they argued, Owens's claims in his 2013 complaint, which arose from incidents that took place from 2006 to early 2010, were barred by the two-year statute of limitations. The judge granted the motion except as it related to three grievances (all related to postage issues). Owens never received responses to these grievances, so the judge determined that the claims could not be dismissed under the statute of limitations until it was clear when Owens had exhausted his administrative remedies. The judge also dismissed defendants who lacked personal involvement with the mailrooms: Winick, Schisler, Acevedo, Wright, Asbury, Butler, Cotton, Tasky, John Doe #2, Gaddis, Robinson, and Russell. This left Wayne Robke (the business manager from Hill), John Evans, and the remaining defendants from Pinckneyville and Lawrence, who did not move to dismiss. The judge later entered summary judgment in favor of the remaining defendants.

On appeal Owens challenges the judge's entry of summary judgment as well as the dismissal of several of his claims and named defendants. He principally argues that he adequately alleged actual injury from the defendants' actions and raised a genuine issue of material fact on that question. He also argues that the judge abused his discretion by denying his three motions for recruited counsel and was biased against him.

## III. Analysis

### A. Claims Dismissed at Screening or Pursuant to Motion

The judge appropriately dismissed Owens's claim that the prison unlawfully confiscated his trust account funds to recover litigation expenses that had been loaned to Owens; we have already upheld the provision requiring this. *See Gaines*, 790 F.2d at 1308; *see Eason v. Nicholas*, 847 F. Supp. 109, 113 (C.D. Ill. 1994) ("The deferred deduction of legal costs [as provided by Illinois statute] advanced by the state does not violate the Constitution.").

Owens also challenges the judge's decision to dismiss his claims against IDOC and employees at Hill and Big Muddy who were involved only in the grievance process, but this argument has no merit. IDOC was properly dismissed because it is not a person subject to suit under § 1983. *Will*, 491 U.S. at 64–66; *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012). Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). And the failure to follow a state's inmate grievance procedures is not a federal due-process violation. *Antonelli*, 81 F.3d at 1430.

Owens also argues that the statute of limitations should not bar him from pursuing claims against the employees at Hill and Big Muddy (i.e., his complaints that grievance counselors and librarians denied him access to the library and to legal supplies). Owens was at Hill from 2006 to 2008 and Big Muddy from 2008 to 2010; he filed this complaint on June 14, 2013. He had exhausted all of his administrative remedies by 2009 or 2010. Lawsuits brought under § 1983 are governed by the statute of limitations for personal injury in the state where the injury occurred, which in Illinois is two years. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Therefore, Owens filed one to two years too late without raising any argument that the untimeliness should be excused. He has done this before. *See Owens v. Godinez*, 860 F.3d 434, 438 (7th Cir. 2017).

Owens's claims against Wayne Robke and John Evans for failing to advance postage funds were also untimely, even accounting for the prison's failure to respond to the grievances on this issue. Robke, the business manager at Hill, refused to advance postage for Owens to serve process in his Jefferson County case in 2007. Owens grieved the issue shortly thereafter and appealed the denial all the way up to the Administrative Review Board. Owens exhausted his remedies, so the statute of limitations began to run on July 8, 2008, six months after he received no response from the highest grievance administrator. ILL. ADMIN. CODE tit. 20, § 504.850(e); *see Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2009); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006). He encountered the same issue at Big Muddy when John Evans refused to advance funds for postage. He pursued his two grievances to the Review Board and received denials on June 25, 2009, and July 7, 2010. The statute of limitations ran on those claims in June 2011 and July 2012, but again, Owens did not file his complaint until 2013.

Owens also argues more generally that the definition of "legal mail" under Illinois law is unconstitutional. Inmates with insufficient funds may purchase postage "for reasonable amounts of legal mail" by signing over future funds. § 525.130(a). But when Owens tried to get a loan under this provision, he was denied because pleadings and summonses sent to other parties do not qualify as legal mail. *See* § 525.110(h) (defining legal mail as mail to and from registered attorneys who directly represent offenders, state's attorneys, the Illinois Attorney General, judges or magistrates, and organizations providing direct legal representation). True, two provisions of Illinois law can soften the effects of the limited definition; as the district court pointed out, plaintiffs can seek defendants' leave to waive service or ask the court to serve a summons. *See* 735 ILL. COMP. STAT. §§ 5/2-203.1, 5/2-213. But these provisions do not appear to have been of use to Owens. He asked the court to serve the defendants in his Jefferson County case, but the clerk responded that it was his responsibility. And Owens's attempts to ask the defendants to waive service would be just as futile as his attempts to serve them by mail because the business office would refuse to loan him postage for this non-legal mail.

The appellees repeat this court's holding that inmates "do not have a right to unlimited free postage," but that mischaracterizes Owens's argument. *Gaines*, 790 F.2d at 1308. He did not ask for *free* postage; he wanted the business office to advance him the funds. In *Bounds v. Smith*, the Supreme Court said: "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, *and with stamps to mail them*." 430 U.S. 817, 824–25 (1977) (emphasis added). Illinois does provide stamps, but only for a small

universe of mail. Arguably, a definition of "legal mail" that hinges on the identity of the recipient, not the nature of the document, could impede the ability of an indigent, unrepresented prisoner to prosecute a case effectively. For starters the definition excludes mail sent to potential witnesses and discovery requests sent to the defendants' attorneys, except the Illinois Attorney General.

But we need not decide whether the Illinois regulation defining "legal mail" violates Owens's right to access the courts because the constitutional harms he alleges occurred in 2007 and 2008; therefore, whatever actual injury he suffered because of this regulation (if any, given the reasons those cases apparently were dismissed) occurred too long ago to allow him to challenge the regulation in this lawsuit.

**B. Summary Judgment**

Owens's claims about his lack of adequate access to prison libraries were properly rejected on summary judgment because they are not accompanied by any showing of actual prejudice in a lawsuit. *See Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013). Owens argues that Donna Heidemann, a librarian at Pinckneyville, refused his request for access to the library when he had a limitations deadline approaching in an unspecified case and could not make copies of his grievance. But Owens has not said why he needed to copy his grievance to file a lawsuit or whether he filed without the copy and was somehow prejudiced. In short, the record lacks any evidence that he suffered any prejudice to his ability to access the courts.

Owens's claim that he was not given adequate supplies at Pinckneyville are similarly unsupported. Owens argued that the Assistant Warden's[1] policy of giving indigent inmates two envelopes, ten sheets of paper, and one pen per month did not provide him with enough materials to pursue his lawsuits, but he does not identify any specific negative consequences, nor does he address the evidence in the record that he could request additional supplies at the library as needed.

Owens's final argument about his access to courts is that the librarians at Pinckneyville and Lawrence[2] denied access to his excess legal storage boxes, but here too he fails to provide evidence of actual prejudice. He asserts that he missed a twice-

---

[1] Defendant Charles Dintelman.

[2] Defendants Donna Heidemann and Cathy Musgraves.

extended deadline to file a reply brief because he was unable to access caselaw stored in his boxes. But Owens does not explain why he needed the boxes (for example, if the cases were not available at the library) or why not filing an optional reply brief doomed one of his cases.

The judge also properly entered summary judgment for the defendants on Owens's First Amendment retaliation and conspiracy claims. Owens did not present any evidence that his protected activity—here, grieving and litigating complaints against prison officials —was a "motivating factor" in the defendants' conduct. *See Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016). To the extent that Owens argues that the refusal to send his mail was retaliatory, the officials in the mailroom were following an Illinois statute and guidance from the business office. Owens provides no basis on which to infer that the relevant officials were motivated by anything other than following the law.

Owens's conspiracy claim is also doomed for lack of evidence. To survive a motion for summary judgment, he needs to show evidence of an agreement among the conspirators to violate his rights. *See Amundsen v. Chi. Park Dist.,* 218 F.3d 712, 718 (7th Cir. 2000). On appeal Owens argues that the repeated denials of his grievances are sufficient evidence of conspiracy, but such a conclusory statement cannot defeat a motion for summary judgment. He did not adduce evidence that officials at one prison, let alone those at different ones, agreed expressly or tacitly to interfere with his pursuit of grievances and lawsuits. Therefore, the district court properly entered judgment in favor of defendants Dolce, Fritts, Hartman, Lutz (counselors at Pinckneyville), and Kittle and Hodges (the counselor and warden at Lawrence, respectively).

## C. Other Arguments on Appeal

Owens also argues that the district court's refusal to recruit counsel was an abuse of discretion, but we cannot agree. *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). Owens did face some obstacles, including multiple prison transfers, which made conducting discovery a challenge. But "we will reverse only upon a showing of prejudice," *id.* at 659, and ultimately counsel would not have made a difference in the outcome of this case. Owens's strongest claim (about advancing postage funds) was time-barred—something no attorney could overcome.

Last, Owens argues that because the district judge ruled against him many times, he is biased against him. But adverse rulings, without more, do not prove bias. *Trask v. Rodriguez*, 854 F.3d 941, 944 (7th Cir. 2017).

For all of these reasons, we affirm the judgment of the district court. And in closing we once again warn Owens that he cannot use a single complaint to bring unrelated claims against different defendants. And again we remind district courts that "[c]omplaints like this one from Owens should be rejected . . . either by severing the action into separate lawsuits or by dismissing improperly joined defendants." *Owens*, 635 F.3d at 952. If Owens ignores these instructions again, his continual abuse of the judicial process should be sanctioned.

AFFIRMED.