In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-3224

KENNETH JAMES DAUGHERTY,

*Plaintiff-Appellant,*

*v.*

RICHARD HARRINGTON AND KEVIN PAGE,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois, East St. Louis Division.
No. 3:14-cv-00876 — **Donald G. Wilkerson**, *Magistrate Judge.*

ARGUED SEPTEMBER 5, 2018 — DECIDED OCTOBER 12, 2018

Before KANNE, SYKES, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Kenneth James Daugherty, an Illinois state prisoner, claims under 42 U.S.C. § 1983 that prison officials Richard Harrington and Kevin Page conspired to and did violate his First and Eighth Amendment rights while he was incarcerated at the Menard Correctional Center. The district court granted the defendants' motion for summary judgment in its entirety. We affirm in part and reverse in part.

## I. BACKGROUND

Daugherty was incarcerated at Menard from 1999 to 2013. During the relevant time period, Harrington was Menard's Assistant Warden of Operations responsible for security, and Page was a Correctional Lieutenant. Harrington and Page frequently made rounds to check on staff and the facility, and, in doing so, sometimes spoke with inmates and took complaints. They submitted any complaints about the facility to the maintenance department, which reported directly to Menard's Warden.

Daugherty was housed in Menard's North-1 cell house from March to May 2012. He claims that the conditions of this general-population unit were beset by clogged air ventilation, rust, obstructed light, spiders, roaches, mice, filthy showers, raw sewage in the sink, and refusals by prison staff to provide cleaning supplies to combat these conditions. From the beginning of his placement in the North-1 cell house, Daugherty complained about the conditions he endured in formal grievances and orally to correctional officers and other inmates.

According to Daugherty, in early May 2012, Page demanded that he stop voicing his concerns about prison conditions and threatened Daugherty with segregation if he continued. Later that day, while he was drafting a grievance, Page told him to stop writing grievances.

In mid-May 2012, Daugherty was in line returning from the gym. Based on incendiary statements that Daugherty allegedly made while in line, Page removed him, and, with Harrington's approval, placed Daugherty in segregation. Page also issued Daugherty a disciplinary ticket, which formed the

basis of two prison-rule violations brought against Daugherty.

Following the administrative adjudication of the rule violations, the adjustment committee found Daugherty guilty of "insolence," which resulted in reduced privileges and commissary restrictions, along with a month of disciplinary segregation in the North-2 cell house. There, Daugherty experienced similarly objectionable conditions, including hot temperatures and no cold water. Daugherty complained about the lack of cold water to Page, and also questioned Page about why he drafted a false disciplinary ticket, to which Page responded that "things could get much worse." Shortly thereafter, officials transferred Daugherty to a segregation cell with a steel door (rather than bars), a move typically reserved for inmates of a higher security risk than Daugherty. Neither Harrington nor Page has an independent recollection of Daugherty, the incident, or his complaints.

On June 26, 2014, Daugherty sued Harrington, Page, and others under 42 U.S.C. § 1983. After initially screening Daugherty's *pro se* complaint, the district court dismissed it under 28 U.S.C. § 1915A. Daugherty then filed an amended complaint.

Three claims against Harrington and Page ultimately proceeded to summary judgment, including a First Amendment retaliation claim based on Daugherty's prison condition complaints, an Eighth Amendment conditions of confinement claim, and a constitutional conspiracy claim. The district court granted the defendants' motion for summary judgment in its entirety and further concluded that qualified immunity shielded them from liability.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo* and construe all facts and reasonable inferences in favor of Daugherty, the nonmoving party. *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018). Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.

We first consider Daugherty's argument that the district court erred in granting summary judgment for Harrington and Page on his claim that they retaliated against him because he complained about the conditions of his confinement in violation of the First Amendment.

To prevail on a First Amendment retaliation claim, Daugherty must show: (1) he engaged in protected activity; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity was a motivating factor in the defendants' decision to retaliate. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). Under the first element, the filing of a prison grievance is a constitutionally protected activity supporting a First Amendment retaliation claim, *see id.*, as are oral complaints about prison conditions. *Pearson v. Welborn*, 471 F.3d 732, 740 (7th Cir. 2006).

On appeal, Page concedes that the district court erred in granting summary judgment in his favor as to Daugherty's

First Amendment retaliation claim. We accept this concession and limit our discussion to whether Harrington retaliated against Daugherty for the protected activity of filing prison grievances and making oral complaints concerning the conditions of his confinement.[1]

Daugherty bases his retaliation claim on the May 2012 disciplinary ticket, which led to his segregation. Harrington's only involvement with the disciplinary ticket was Page's request for permission to place Daugherty in segregation immediately after the incident. Although Harrington may have witnessed the incident, Daugherty has failed to identify any evidence suggesting that Harrington's conduct in relation to the incident and disciplinary ticket was motivated by a desire to chill Daugherty's speech or otherwise dissuade him from complaining about the conditions of his confinement.

The only evidence Daugherty points to is vague and confusing testimony that Daugherty, at some point, named Harrington in a grievance, but there is no evidence about what the grievance said or whether Harrington even saw or knew about it. Likewise, Daugherty's conclusory statement that "I have been basically warned" to stop writing grievances does not raise a reasonable inference that Harrington made any such statement, especially because Daugherty admits that he never spoke to Harrington about his concerns regarding the conditions of his confinement.

---

[1] In conceding that the district court erred in granting summary judgment in his favor on Daugherty's First Amendment retaliation claim, Page implicitly concedes that the court erred in granting him qualified immunity on that claim. So, to be clear, in accepting Page's concession, we necessarily and additionally reverse the district court's grant of qualified immunity as to Page on Daugherty's First Amendment retaliation claim.

Nonetheless, Daugherty asserts that a jury could impute Page's retaliatory motive to Harrington. Daugherty has waived this argument because he presents it for the first time in his reply brief. *E.g.*, *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 843 (7th Cir. 2018).

Viewing the record and all reasonable inferences in Daugherty's favor, no reasonable jury could conclude that his grievances and complaints about the conditions of his confinement were a motivating factor in—or even factored into—Harrington's approval of placing him in segregation after the May 2012 incident.

**B.**

Daugherty also challenges the district court's grant of summary judgment on his claim that Harrington and Page subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment. Inmates have the right to "humane conditions of confinement," and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). An Eighth Amendment violation has both an objective and subjective component. "First, the deprivation alleged must be objectively, sufficiently serious. Second, the mental state of the prison official must have been one of deliberate indifference to inmate health and safety." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (per curiam).

Here, even if Daugherty could satisfy the objective element of his claim, he cannot satisfy the subjective element—deliberate indifference—as to either defendant. Simply put,

no reasonable jury could find that either defendant was deliberately indifferent to Daugherty's alleged plight.

Under the subjective component, Daugherty must present evidence raising a triable issue of fact that Page and Harrington knew of and consciously disregarded an excessive risk to his health and safety. *See Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017). Daugherty identifies no evidence suggesting either defendant knew of and disregarded any excessive risk to his health or safety insofar as it relates to the conditions of his confinement. Daugherty never complained to Harrington, and in fact shied away from talking to him, and Daugherty's contention that Page told him to stop complaining about the conditions of his confinement, without more, is too vague to meet the deliberate indifference standard under the circumstances. Moreover, it is undisputed that standard procedure at Menard was for staff to refer any inmate complaints about the facility to the maintenance department, which reported to Menard's Warden. There is likewise no genuine factual dispute that Page, as he explained, would routinely attempt to resolve maintenance issues by submitting work orders or taking other remedial measures like providing supplies or directing inmate workers to attend to issues.

More fundamentally, although Harrington and Page may have made rounds through the prison and talked to inmates about their complaints, there is no evidence that either of them was specifically aware of the particular conditions forming the basis of Daugherty's Eighth Amendment claim. As such, Daugherty's conclusory assertions that the defendants "did nothing" cannot create a genuine issue of material fact, particularly without any evidence about what either defendant may have done or not done. "Summary judgment is not a

time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (quoting *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016)).

Construing the record in the light most favorable to Daugherty, no reasonable jury could find that Harrington or Page acted with deliberate indifference towards Daugherty or otherwise disregarded or failed to act on knowledge of a substantial risk to Daugherty's health and safety.

## C.

Daugherty additionally attacks the district court's grant of summary judgment on his claim that Harrington and Page conspired to violate his First and Eighth Amendment rights. To prevail on a conspiracy claim, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, Daugherty must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511.

Even if, as Daugherty contends, Harrington and Page knew that he never made the remarks alleged in the disciplinary report, these facts do not support the existence of an agreement between them to violate Daugherty's constitutional rights. *See Owens v. Evans*, 878 F.3d 559, 565 (7th Cir.

2017) (affirming summary judgment for defendant on § 1983 conspiracy claim, where prisoner "did not adduce evidence" that officials "agreed expressly or tacitly to interfere with his pursuit of grievances and lawsuits"). Daugherty's assertion that Harrington and Page actively and jointly concealed the truth that he did not make incendiary remarks is based on mere speculation. In sum, Daugherty has failed to identify any evidence, circumstantial or otherwise, of an agreement to deprive him of his constitutional rights.

### III. CONCLUSION

We therefore AFFIRM in part and REVERSE and REMAND in part for further proceedings consistent with this opinion.