**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 17, 2019*
Decided September 23, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1696

| | |
|---|---|
| ROBERT J. MARX, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 15-cv-764-wmc |
| | |
| RICHLAND COUNTY, WISCONSIN, | William M. Conley, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

After returning from military service in Afghanistan, Robert Marx was diagnosed with post-traumatic stress disorder and deemed disabled by the United States Department of Veterans Affairs. A Richland County Veterans Affairs officer tried to assist Marx in applying for benefits; she explained that she could help Marx if they met in person. Marx did not attempt to meet with her. Instead, believing that the officer was refusing to assist him because of his disorder, and objecting to the in-person

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

meeting requirement, he filed suit under the Americans with Disabilities Act and the Rehabilitation Act of 1973. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The district court entered summary judgment against Marx because he failed to provide evidence of unlawful discrimination. That reasoning is correct, so we affirm.

Marx first sought help applying for veterans' benefits in February 2015. He visited the Veterans Services Office in Richland County, Wisconsin, to meet with the county's Veterans Affairs officer. But before the meeting took place, Marx suffered an anxiety attack and returned home. He did not reschedule or recontact the office.

A few months later, Karen Knock took over as the Veterans Affairs officer and attempted to contact Marx. She left him a voicemail explaining that she "was there for [him]," and encouraged him to stop by the office so that she could meet him in person. (Because of confidentiality concerns, the office requires one in-person meeting so that the officer can verify the veteran's identity.) Marx did not return Knock's call.

Two months later, Knock again sought to help Marx after Marx had emailed several Richland County employees about unrelated issues. In one email, Marx mentioned that he had been unable to obtain veteran's benefits and asked that his email be forwarded to the Veterans Services Office. Knock received the forwarded email, and she immediately wrote Marx, reiterating her availability to help him and again inviting him either to make an appointment or to stop by the office as a walk-in.

Marx again did not accept Knock's offer to meet with him. Instead, he complained about the wording of her email, questioning whether she had training related to his disorder, and speculating that she would not be much help to him. Knock replied that she could assist him, but she needed to meet him in person, so she once again invited him to make an appointment or walk into the office. Marx did not respond. Over the next few months, Knock continued to reach out to Marx by sending him three more emails. These messages provided him with information about his disorder and offered him further assistance.

Instead of responding to Knock, Marx filed a charge of discrimination against the Richland County Veterans Services Office in July of 2016. Months later, he emailed a county supervisor. He sought information about the in-person-meeting policy and explained that he was unable to meet with Knock in her office because doing so presented a risk of "significant physical and emotional trauma." The supervisor forwarded this email to Knock, who replied to the supervisor that she had offered to

meet Marx in his home but had not received any response from him. Marx asserts that he did not learn about Knock's offer to visit his home until the following year, when he received a letter from the government about his discrimination charge. The letter explained that the Department of Justice could not handle his charge because the county's Veterans Services office received no federal funding; it added that Knock remained willing to visit Marx in his home. Even then, Marx still did not attempt to meet Knock.

Marx then sued Richland County and Knock for violating the Americans with Disabilities Act and the Rehabilitation Act. The district court dismissed Knock, ruling that neither Act allowed suits against persons (a decision that Marx does not appeal). The court later entered summary judgment for the county for lack of evidence of discrimination.

On appeal, Marx first maintains that the county has violated the ADA and the Rehabilitation Act. He contends that the in-person meeting policy is not necessary and is intended to restrict his access to benefits "because he is a veteran with PTSD." To survive summary judgment on his claims, Marx needed to provide evidence of at least one of the following: (1) the county intentionally discriminated against him because of his disability; (2) it refused to provide him with a reasonable accommodation for his disorder, or (3) the in-person meeting policy had a disproportionate impact on people with disabilities. 42 U.S.C. § 12182(b)(2)(A); *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018).

Marx has not furnished evidence of any of type of disability discrimination. To the contrary, the undisputed evidence shows that the office repeatedly offered to assist Marx with obtaining veterans' benefits. The office contacted Marx frequently and invited him several times to schedule an appointment or stop by the office as a walk-in. Then, after Marx filed his charge of discrimination and the county first learned that an in-office meeting would traumatize him, the office further accommodated him by offering an in-home meeting—an offer that Marx ignored. Finally, Marx supplied no evidence that the in-person meeting requirement is unnecessary or disproportionately affects disabled persons. He relies only on unsupported conclusory assertions. But statements "not grounded in specific facts" in the record do not create a genuine dispute of material fact sufficient to overcome summary judgment. *See Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018).

Marx also raises two other unavailing arguments. First, he contends that the district court erroneously concluded that the county was unaware of Marx's PTSD. But the district court did not so conclude. Rather, it ruled that no evidence suggested that the county knew that Marx could not meet with Knock in person. That ruling is correct: Marx presented no evidence that he ever told the county that he could not meet with Knock in person. (As we just mentioned, he told the county only that he could not meet Knock in her office—a limitation that he did not relay until after he charged the county with discrimination). Second, Marx contests the district court's conclusion that he was to blame for the communications breakdown. But that conclusion was based on undisputed evidence: Marx ignored Knock's many invitations to meet her; before he charged the county with discrimination, he never told any county official why he refused to meet in Knock's office; and after he learned that Knock would meet him at his home, he never responded. In short, Marx is the one who ended the correspondence, and his unfounded assertions to the contrary cannot stave off summary judgment. *See Daugherty*, 906 F.3d at 611.

We have considered Marx's other arguments, but none has merit.

AFFIRMED