**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 7, 2020*
Decided December 8, 2020

*Before*

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1643

| | |
|---|---|
| SHOMAS T. WINSTON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-953-jdp |
| LARRY FUCHS, et al., *Defendants-Appellees*. | James D. Peterson, *Chief Judge*. |

**O R D E R**

Shomas Winston, a federal inmate, was disciplined after he violated an order not to contact a female psychologist. Before violating that order, Winston had filed an unsuccessful grievance to contest the order. Winston now sues prison staff, accusing them of violating the First Amendment by disciplining him in retaliation for his grievance. The district court entered summary judgment for the defendants. The record

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

undisputedly shows that the discipline occurred because Winston violated the no-contact order, so we affirm.

After requesting therapy from his prison's psychological services unit, Winston insisted that a woman treat him. He visited twice with a male psychologist, but was later scheduled to visit Dr. Ana Becerra, a female psychologist. Afterward, he sought appointments with only her. He told her that, although her treatment helped him, he requested her, in part, because she was a woman. Disturbed by this comment, Dr. Becerra and her supervisor, Dr. Daniel Huneke, read Winston's inmate file and learned that at another prison Winston had verbally harassed a female psychologist. In Winston's file, that psychologist also wrote "to alert future treatment providers" that Winston told her that he thought about her "all the time" and was attracted to her. After reading this, Dr. Huneke transferred Winston back to a male psychologist. Nonetheless, Winston repeatedly sought Dr. Becerra's services. He came to her office unscheduled six times in one month to seek treatment from her. She and Dr. Huneke reminded Winston that he had been reassigned to a male psychologist. Winston responded, "What if it is not about psychological services?"

Winston continued to insist on treatment from female psychologists, leading to an order that he desist from seeking them out. He asked for any clinician other than his assigned male psychologist because, he said, the man resembled his dead stepbrother. Winston also tells us that another inmate accused of soliciting female psychologists was allowed to meet with them. Dr. Huneke denied Winston's request. He explained that, before Winston met Dr. Becerra, he saw the male psychologist without complaint, and because the other psychologists were all women, Dr. Huneke was concerned that, in light of Winston's documented past, he might harass them. Winston later contacted a second female clinician anyway; she told him to see his assigned psychologist. Dr. Huneke then ordered Winston to "discontinue [his] requests to meet with female … staff members." If Winston disobeyed, Dr. Huneke warned, he would issue a conduct report. Winston complained about this order to the warden, who did not intervene, and to the security director, Larry Fuchs, who Winston says advised him not to file a grievance.

Winston filed an unsuccessful grievance against Dr. Huneke, anyway, for ordering him not to contact female staff. While the grievance was pending, Winston asserts, he and Dr. Huneke crossed paths near the library, and Dr. Huneke told Winston that he "shouldn't have filed." An examiner denied Winston's grievance and advised

him to discuss his concerns with the psychological services unit. Winston responded by contacting Dr. Becerra personally and seeking her help.

Because Winston contacted Dr. Becerra despite the no-contact order, Dr. Huneke issued a conduct report to Winston for disobeying that order and for having solicited Dr. Becerra. Before his hearing, Winston told a security supervisor, Corey Rahlf, that Dr. Huneke was retaliating against him; Rahlf advised Winston, as he does all inmates, not to talk about staff outside of the grievance process. Rahlf and another officer later presided at the hearing, and Winston, Dr. Becerra, and Dr. Huneke testified. Winston admitted that he "disobey[ed] the order from Dr. Huneke" by contacting Dr. Becerra. But, he insisted, he never solicited staff at his prior prison. Dr. Becerra testified that Winston repeatedly requested her for appointments after she told him to stop. And, although he never called her attractive, he twice told her that he visited her "80% for therapy, the other 20% . . . because [she] was female," a statement that, coupled with his prior psychologist's warning, worried her. Dr. Huneke testified that he was also worried about Winston's behavior toward female psychologists. After the hearing and reviewing Winston's file, Rahlf and the other officer found that Winston's testimony was "less than truthful," and they accepted the conduct report as credible. They disciplined Winston with 30 days in segregated housing.

This suit came next. As relevant to this appeal, the defendants moved for summary judgment on Winston's claim that Dr. Huneke, Fuchs, and Rahlf violated his First Amendment rights by retaliating against him for filing a grievance. The district court entered summary judgment for the defendants, concluding that no reasonable jury could find that Dr. Huneke, Fuchs or Rahlf had retaliated against Winston.

To overcome summary judgment on his First Amendment claim, Winston needed to furnish evidence that the defendants were motivated to punish him with materially adverse action because he engaged in constitutionally protected activity. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). We review entry of summary judgment de novo, construing the record most favorably to the nonmovant. *Id.* at 609. We will assume that Winston's grievance is protected activity, *see Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020); *but see Herron v. Meyer*, 820 F.3d 860, 864 (7th Cir. 2016) (questioning whether all grievances are protected speech), and that his transfer to segregated housing for 30 days was materially adverse punishment, *see Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). But Winston did not produce enough evidence for a reasonable jury to find that his grievance was the but-for cause of his

discipline, *see Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019), so the district court properly entered summary judgment.

The record conclusively establishes that the defendants were motivated to discipline Winston because he violated the order not to contact female staff. Winston does not dispute that Dr. Huneke ordered him not to contact Dr. Becerra. Nor does he contest that the order arose after Dr. Huneke read his prior female psychologist's warning about unwanted attention and learned about Winston's many unpermitted visits to Dr. Becerra and his declared preference for Dr. Becerra as a woman. Moreover, he admitted that he violated this order. *See* WIS. ADMIN. CODE DOC § 303.28(1), (2). Finally, Winston does not argue that the defendants leave unpunished admitted violations of their reasonable orders. (He observes only that one inmate was allowed to visit female psychologists after an accusation of harassment, but he does not say that the inmate violated any order to desist.) These facts establish that Winston's violation motivated the defendants to punish him.

Winston raises several unavailing responses. First, he argues that warnings from Fuchs (the security director) not to file a grievance, and from Dr. Huneke that Winston "shouldn't have filed" his grievance, suggest that his grievance also motivated the discipline. But even if the grievance "play[ed] a part in that decision" to discipline Winston, no First Amendment violation occurred if "the same decision would have been reached" had Winston filed no grievance. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–86 (1977). And, as just explained, the defendants have conclusively shown that Winston's no-contact violation motivated them to discipline him. Thus any effect that the grievance may have also separately had on the defendants has "done no work, had no effect, left the world unchanged." *Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011).

Second, Winston maintains that the district court ignored four facts that he believes show retaliation. He observes that (1) Rahlf advised Winston not to talk about Dr. Huneke outside the complaint process; (2) Rahlf relied on Dr. Becerra's testimony (such as Winston saying that he was motivated to visit her "20%" because of her sex), yet Winston believes that her testimony was not credible because she inaccurately recorded one memory of his; (3) the other inmate accused of harassment was never ordered to stop seeing female psychologists; and (4) the grievance examiner told him to contact the psychological services unit, so, when he contacted Dr. Becerra for the last time, he reasonably thought that Dr. Huneke's order was "waived."

None of these facts outweighs the district court's reasons for entering summary judgment. To begin, Rahlf gave an undisputed, non-retaliatory reason for his advice: He routinely advises all inmates against making statements outside the complaint process to avoid a charge of disrespecting staff. Also, Rahlf explained that his decision to discipline Winston was based not just on Dr. Becerra's statements, but on Winston's own admission of violating the no-contact order. Next, the absence of an order blocking the other inmate from seeing female psychologists does not undercut the reasonableness of the order against Winston; nothing in the record tells us about the other inmate's history or the nature of the accusation against him, so no factfinder could say that he and Winston are comparable. Finally, Winston's argument that the grievance examiner had "waived" Dr. Huneke's order is meritless. The examiner told Winston to contact the psychological services unit, where he had been assigned a male psychologist. But instead of contacting his assigned clinician in that unit, or the unit's supervisor (Dr. Huneke), he defied Dr. Huneke's order and contacted Dr. Becerra.

Last, Winston contends that Fuchs retaliated against him by classifying his solicitation charge as a "major offense." But "solicitating an employee" is a major offense, WIS ADMIN. CODE DOC § 303.71(2), so Fuchs had no discretion in authorizing the charge to proceed as one.

We have considered Winston's remaining arguments, and none has merit.

AFFIRMED